IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEYAH JENSEN

       Plaintiff,

                            3:12-cv-00759-PK

                            FINDINGS AND
                            RECOMMENDATION

SIMON & SCHUSTER, INC.,

       Defendant.

PAPAK, Judge:

       Plaintiff Leyah Jensen brings this employment discrimination action against defendant

Simon & Schuster, Inc. ("Simon & Schuster"), arising out of her termination from the position of

Associate Art Director in March 2011.  Jensen alleges claims for violations of the Americans

With Disability Act (ADA), as well as for unpaid wages, expenses, advances, and royalties.  Now

before the court is Simon & Schuster's motion to dismiss and alternative motion to transfer

venue.  (#13.)  For the reasons discussed below, Simon & Schuster's motion to dismiss should be

granted in part and denied in part and its alternative motion to transfer venue should be denied

with leave to refile.

## BACKGROUND[1]

Jensen's *pro se* complaint alleges that she was terminated on March 24, 2011 from her position as an Associate Art Director at Simon & Schuster in New York after repeatedly seeking accommodation for her disabilities of depression and Attention Deficit Disorder. (Compl., #2.) Sometime thereafter Jensen filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) in Seattle, Washington.[2]

In the fall of 2011, Jensen went abroad to investigate alternative treatments for her life partner who was suffering from cancer. (Jensen Decl., #21, ¶3.) She informed EEOC investigator Roxanne Zygmund by phone and voicemail that since she was out of the country, the EEOC would have to contact her via email instead of by mail to her New York address. *Id.* On November 9, 2011, Jensen emailed Zygmund confirming that she was still abroad but also stated that she would be back in New York "very soon with full connection," as well as the ability to meet in person "any time the 16th through the 19th," presumably referring to November 16-19, 2011. *Id.*, Ex. A. Nevertheless, all of Jensen's other communication with the EEOC subsequent to the November 9 email occurred exclusively by email. *Id.* at ¶3.

Jensen requested a right-to-sue letter from the EEOC through an email sent on November 29, 2011. *Id.* at ¶5, Ex. B. The New York office of the EEOC issued a right-to-sue letter on

---

[1] Much of the following factual recitation cannot be considered by this court on Simon & Schuster's motion to dismiss without converting the motion into a motion for summary judgment. I include it anyway to illustrate why converting the motion to dismiss into a motion for summary judgment would still not dispose of the statute of limitations issue, and to provide background for Simon & Schuster's motion to change venue.

[2] Jensen alleges in her complaint that she filed a charge with the EEOC on June 29, 2011, but later declared that she filed the charge in April 2011. *Compare* (Compl., #2, at 4) *with* (Jensen Decl, #21, ¶2.)

December 14, 2011 and Simon & Schuster received a courtesy copy of that letter in the mail two

days later, on December 16, 2011.[3] (Semel Decl., #15, ¶2, Ex. 1.) The letter bore Jensen's New

York address in the upper left-hand corner of the page. *Id.* Jensen, however, never received the

letter or any other communications – email or otherwise– from the EEOC during December

2011 and the majority of January 2012.[4] (Jensen Decl., #21, ¶6.) Almost a year after the EEOC

issued the right-to-sue letter and six months after Jensen brought this suit, Jensen asked

Zygmund whether the EEOC had any record of having sent the right-to-sue letter to her New

York address. *Id.* at ¶9. Zygmund responded that "I do believe I mailed the Notice of Right to

Sue to your Seattle address," although Zygmund could not be sure because the EEOC's file room

had been destroyed by a flood. *Id.* at Ex. E. Neither Jensen nor anyone on her behalf received a

mailing from the EEOC at her Seattle address. *Id.* at ¶9.

　　　　After completing her travels, Jensen moved to Portland. *Id.* at ¶7. On January 30,

2012, Jensen emailed EEOC investigator Zygmund, providing her new mailing address in

Portland and  inquiring about the status of her right-to-sue letter, stating that she had not yet

received it. *Id.* at Ex. C. The same day, Zygmund wrote Jensen a letter enclosing a copy of the

---

[3] Although not attached to the complaint, the EEOC right-to-sue letter is a matter of
public record subject to judicial notice, Jensen's complaint implicitly relies on the existence of
the letter, and the authenticity of the letter is not disputed. For all these reasons, the letter itself is
properly considered on this motion to dismiss. *See Lee v. Los Angeles*, 250 F.3d 668, 688-689
(9th Cir. 2001) (on motion to dismiss court may take judicial notice of matters of public record
and may consider documents not necessarily relied upon by the plaintiff's complaint but not
physically attached whose authenticity is not contested).

[4] While Jensen was out of the country and without a permanent address, she had her
former roommate in New York forward mail to her. *Id.* at ¶6. The roommate assured Jensen that
she never received any mail from the EEOC, and Jensen received other forwarded mail during
that same period. *Id.*

December 14, 2011 right-to-sue letter, stating that Jensen's case "was closed on December 14, 2011 with a Notice of Right to Sue (enclosed) . . . ." *Id.* at ¶7, Ex. D. Zygmund's letter was postmarked February 1, 2012. *Id.* Jensen received the letter on February 3, 2012. (Compl., #2, at 4.)  This was the first time Jensen had received the right-to-sue letter. *Id.* at ¶7. Jensen initiated this suit on April 30, 2012, within 90 days after receiving the new copy of the original right-to-sue letter. (Compl., #2.)

## LEGAL STANDARD

### I.    Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To raise a right to relief above the speculative level, "[t]he pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation omitted).  Instead, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009), (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In ruling on a Rule 12(b)(6) motion to dismiss, a court must take the complaint's allegations of material fact as true and construe them in the light most favorable to the nonmoving party. *Keams v. Tempe Tech. Inst.*, 39 F.3d 222, 224 (9th Cir. 1994).  Moreover, the "court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

II.    **Motion to Transfer**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a).  However, a party seeking transfer must make "a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

## DISCUSSION

I.    **Motion to Dismiss**

A.    **Discrimination Claims– Statute of Limitations**

Simon & Schuster contends that Jensen's complaint and other documents properly considered on a motion to dismiss establish that Jensen failed to commence her discrimination claim within the time required by the applicable statute of limitations.  Before bringing a suit under the ADA, a plaintiff must comply with the administrative exhaustion requirements in Title VII. *See* 42 U.S.C. § 12117(a).  Under Title VII, if the EEOC dismisses a discrimination charge, it must notify the claimant that she has ninety days to bring a civil action.  42 U.S.C. § 2000e–5(f)(1); *Payan v. Aramark Mgmt. Services Ltd. P'ship*, 495 F.3d 1119, 1121 (9th Cir. 2007).  This ninety-day period operates as a limitations period such that if the claimant fails to bring suit in that time, her action is time-barred.  *Id.*  The period starts when the right-to-sue notice letter arrives at the claimant's address of record.  *Id.* at 1122 (citing *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997); *Scholar v. Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992)).  Failure to file suit within this 90-day period is an affirmative defense, on which the defendant bears the burden of proof.  *Id.*

Simon & Schuster contends that the December 14 right-to-sue letter "indicates it was mailed to plaintiff's New York address," presumably because a courtesy copy of that letter received by Simon & Schuster bore Jensen's New York address in the area normally reserved for the address of the primary recipient. (D.'s Br., #14, at 5.) Additionally, Simon & Schuster describes the rule announced by the Ninth Circuit in *Payan* that when the actual date of receipt of an EEOC right-to-sue letter is unknown but receipt itself is not disputed, the letter is presumed to have been mailed on its issuance date and received three days later. *Payan*, 495 F.3d at 1122-1125. Applying *Payan* to the facts in this case, Simon & Schuster concludes that Jensen's right-to-sue letter was presumed to have been delivered on December 17, 2011, starting her 90-day window to bring suit. Since Jensen did not file suit until April 30, 2012 – more than four months later – Simon & Schuster concludes that the action is time-barred.

Jensen, by contrast, contends that the 90-day limitations period did not begin until she actually received the copy of the right-to-sue letter, sent to her Portland address, in February 2012. Jensen focuses on two cases that endorse the approach taken by the Seventh Circuit, which holds that a claimant who does not receive actual knowledge of her right-to-sue letter through no fault of her own should not be penalized through application of the statute of limitations. *See Nelmida v. Shelly Eurocars*, Inc., 112 F.3d 380, 383 (9th Cir. 1997) (citing *St. Louis v. Alverno College*, 744 F.2d 1314, 1315, 1317 (7th Cir. 1984)); *Ryan v. Joseph's Bi-Rite Market*, 688 F.Supp. 573 (E.D. Ca. 1988) (also citing *Alverno College*). Jensen therefore asserts that she was not at fault for failing to receive the December 14 letter because she told the EEOC that she would be available only by email and had a roommate forward her mail. Additionally, Jensen attempts to distinguish *Payan*: in that case the actual date of receipt of the right-to-sue

letter was unknown, whereas here Jensen actually received the letter on February 3, 2012, within

90 days of her filing. Further, Jensen argues that equitable tolling should extend the beginning of

the limitations period to the date when she actually received the letter. Finally, Jensen contends

that there remains a dispute of fact concerning whether she acted reasonably in failing to receive

the right-to-sue letter until February 2012, which precludes application of the statute of

limitations to her discrimination claims on a motion to dismiss.

There are two analytically separate issues at play concerning the statute of limitations.

The first is whether the court can presume Jensen received the right-to-sue letter at her New York

address soon after its December 14, 2011 issuance date, based only on the text of the letter itself.

The second is whether the EEOC was even entitled to provide notice of Jensen's right to sue by

mail in December 2011, when Jensen had earlier notified the EEOC that she wished to be

contacted only through email. Because the resolution of the first issue disposes of Simon &

Schuster's statute of limitations argument on this motion to dismiss, and because the resolution

of the second issue requires the court to consider factual matter inappropriate for a motion to

dismiss, I address only the first issue.

Simon & Schuster relies on the 3-day delivery presumption established by *Payam* to

assert that the right-to-sue letter should be considered to have been actually sent and received to

Jensen's New York address on December 17, 2011. However, *Payam* is inapplicable to the

present dispute. *Payan* concerns only the narrow question of *when* delivery occurred, rather than

the question of *whether* delivery occurred in the first place. In *Payan*, the Ninth Circuit reviewed

the district court's grant of summary judgment on plaintiff's Title VII claim. There, plaintiff

admitted that the EEOC mailed a right-to-sue letter to her address of record and that she received

the letter, but plaintiff claimed not to have known when the letter actually arrived. *Id.* at 1122. On those facts, the Ninth Circuit adopted a three-day delivery presumption to determine *when* the letter arrived at the plaintiff's address of record. *Id.* at 1123-1125.

In this case, however, the parties dispute *whether* the EEOC originally mailed the December 14 letter at all, *whether* the EEOC mailed the letter to Jensen's New York address, and *whether* the letter was received there. When the fact of mailing itself is disputed, as here, courts apply the long-established "mailbox rule," not the three-day delivery presumption set out in *Payan. See Payan,* 495 F.3d at 1123 n.4 (citing *Busquets-Ivars v. Ashcroft,* 333 F.3d 1008, 1009-1010 (9th Cir. 2003); *Schikore v. BankAmerica Supp'l Ret't Plan,* 269 F.3d 956, 963-964 (9th Cir. 2001)). Under the mailbox rule, "if a letter properly directed is proved to have been either put into the post-office or delivered to the postman, it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker,* 111 U.S. 185, 193 (1884). That is, mail is presumed to have been received only if the party asserting receipt provides sufficient evidence that the letter was mailed to its intended destination. *Payan,* 495 F.3d at 1123 n.4. If established, the presumption can be rebutted by presenting sufficient evidence of non-receipt. *Schikore,* 269 F.3d at 963.

On this motion to dismiss, Simon & Schuster has not presented sufficient evidence to establish the presumption that the EEOC actually mailed the right-to-sue letter to Jensen's New York address. The only evidence of the letter being mailed to the New York address is the date of issuance and the address, both of which appear on the right-to-sue letter itself. Several courts

addressing a similar issue in this circuit found such evidence to be insufficient. *See Rubalcaba v. Gucci Am., Inc.*, No. CV–12–01503–PHX–GMS, 2012 WL 5205596, at *2 (D. Ariz. Oct. 22, 2012) (denying motion to dismiss Title VII claims where defendant's only evidence of right-to-sue letter being mailed was the date of issuance on the letter); *Turner v. Dep't of Educ.*, No. CIV. 10–00707 ACK, 2011 WL 1637333 at *6 (D.Haw. Apr. 28, 2011) (same); *cf. Mahon v. Credit Bureau of Placer Cnty., Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999) (presuming receipt where proponent produced evidence of company's standard business practice for mailings, including automated systems to print letters, insert them into envelopes, stamp them, and mail them). Accordingly, for the present the court must accept as true Jensen's allegation that she first received the EEOC right-to-sue letter on February 3, 2012, less than 90 days before she filed suit. Simon & Schuster's motion to dismiss should therefore be denied with respect to Jensen's discrimination claims.[5]

## B.    Non-Discrimination Claims

In addition to her disability discrimination claim, Jensen's complaint alleges two other causes of action. First, she contends that Simon & Schuster refused to pay her earned salary and

---

[5] Even if this court were to convert the present motion to dismiss into a motion for summary judgment and consider the full record presented by the parties, I would still recommend denying that motion. Simon & Schuster assumes the right-to-sue letter was mailed to Jensen's New York address because the letter bears that address, although no original envelope or delivery confirmation exists. Meanwhile, Jensen asserts that her New York roommate never received the letter and presents an email from the EEOC investigator suggesting the letter was sent to Jensen in Seattle, not New York. It is clear that a factual dispute remains concerning whether the EEOC mailed the December 14 letter to Jensen's New York address. In oral argument, Simon & Schuster referenced other discovery that may be conducted relevant to the mailing issue, including deposition of EEOC staff and Jensen's roommate in New York. The court therefore anticipates that Simon & Schuster will present a summary judgment motion on the statute of limitations issue at a later date, after supplementing the current record.

reimburse her certain expenses pursuant to company policy upon her termination. (Compl., #2, at 7.) Second, Jensen alleges that Simon & Schuster failed to pay advances and royalties for three books on which she served as a photographer and illustrator "in excess of her job duties," during overtime hours. *Id.* Jensen does not describe the legal theories upon which these claims are based.

Simon & Schuster argues that Jensen's claims unrelated to discrimination fail to allege sufficient non-conclusory factual content to raise a plausible right to relief. Jensen essentially concedes that those claims are currently deficient as pled, but asks for leave to amend to state her claims with more specificity. Jensen filed her complaint in this action *pro se*. It is quite possible that the deficiencies in her claims for unpaid wages, advances, and royalties can cured through amendment. Therefore, the court should grant leave to replead those claims. *See Karim-Panahi v. Los Angeles Police Dep't.*, 839 F.2d 621, 623-624 (9th Cir. 1988) ( a *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment).

## II.    Motion to Transfer

Finally, Simon & Schuster argues that this court should transfer the present action to the Southern District of New York under 28 U.S.C. § 1404(a). In order to transfer venue under Section 1404(a), a court must make two findings: (1) that the transferee district court is one where the action might have been brought; and (2) that the convenience of parties and witnesses in the interest of justice favor transfer. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Jensen concedes that this action might have been brought in the Southern District of New

York. Therefore, the issue to be decided is whether the "the interest of justice" and "the convenience of the parties and witnesses" require transfer at this point in the litigation.

Before transferring pursuant to § 1404(a), the Court should consider public factors relating to "the interest of justice" and private factors relating to "the convenience of the parties and witnesses." *Decker Coal*, 805 F.2d at 843. Public factors include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.* Private factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.*

A.    **Convenience of Witnesses**

Simon & Schuster first contends that the Southern District of New York is the most convenient forum because all witnesses, apart from plaintiff, are located in New York. Simon & Schuster anticipates that Jensen's co-workers, supervisor, department head, and the Human Resources Director, all of whom work for Simon & Schuster in New York, will be potential witnesses. Jensen points out that because all of these individuals are employees of defendant, there is no legitimate concern about whether they can be compelled as witnesses in Oregon.

Further, the cost of obtaining attendance by those witnesses is not dispositive, since their testimony can be introduced at trial either through prerecorded video depositions or by live telephone or video link.  Nevertheless, the court recognizes that a trial will be more unwieldy if the majority of witnesses appear remotely.

Simon & Schuster, however, also identifies three key non-party witnesses located in New York:  the EEOC investigator Roxanne Zygmund and Jensen's New York roommate, both of whose testimony will be relevant to the statute of limitations question; and Jensen's treating physician during her employment with Simon & Schuster, presumably located in New York, whose testimony is relevant to the nature and effect of her disability and the documentation supporting her requests for accommodation.  Jensen also references several non-party potential witnesses located outside of New York, such as her current treating physician, witnesses to her attempts to secure new employment after being terminated, and witnesses concerning her international travel.  Jensen's current physician may offer some relevant testimony concerning Jensen's disability and current emotional distress, but I agree with Simon & Schuster that the more important medical testimony will come from the provider who treated Jensen during her employment.  Witnesses concerning Jensen's subsequent efforts to find new employment may be relevant to mitigation of damages, although again I agree with Simon & Schuster that mitigation issues are unlikely to be central to the case, especially because Jensen can testify to her own job-search efforts.  Finally, witnesses attesting to Jensen's international travel are unlikely to be relevant to the statute of limitations question, which will focus on whether the EEOC actually sent the December 14, 2011 letter to Jensen's New York address and, potentially, on whether the

EEOC agreed to communicate with Jensen only by email. Overall, then, the convenience of non-party witnesses weighs in favor of the Southern District of New York.

### B.     Location of Evidence

Both parties contend that the location of documentary evidence favors their preferred forum. Simon & Schuster notes that documents relating to Jensen's work performance and requests for accommodation are in New York, while Jensen argues that she possesses hundreds of pages of records relating to her employment, medical treatment, and subsequent work history. However, since the parties focus exclusively on documents, which are easily transported or digitized, this factor favors neither forum.

### C.     Convenience of Parties

Despite Simon & Schuster's insistence to the contrary, convenience of the parties weighs against transfer. Setting aside Simon & Schuster's employee witnesses, which are discussed above, one side or the other will be forced to travel across the country for hearings, settlement conferences, and potentially for trial. Jensen argues that Simon & Schuster, a large corporation, can more easily bear the burden of this travel than she can. Simon & Schuster insists that the relative financial burden on the parties should not be considered by the court. I disagree.

Where a corporate defendant has "failed to demonstrate that it would be prohibitively expensive or difficult" to travel to plaintiff's chosen forum, the defendants' "assertions regarding monetary expense and difficulty alone" will not justify transfer. *See Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060, 1073 (D. Hawaii 2000) (denying motion to transfer venue from the District of Hawaii to the Southern District of New York despite that many witnesses were located

in New York, because the large corporate defendant could more easily afford long-distance travel

than could the plaintiff) (citing *Core–Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1489 (9th

Cir. 1993)).  Simon & Schuster has not presented evidence that it would be prohibitively

expensive to travel to this district.  Moreover, as a large national corporation, Simon & Schuster

is much more able to sustain the expense of traveling to litigate this matter than plaintiff.  Jensen

is unemployed, has been allowed to proceed in this action *in forma pauperis* because of her lack

of financial resources, and attests that transfer of venue would pose a serious financial hardship

and possibly prevent her from pursuing this action altogether.  (Jensen Decl., #21, ¶14.)  Jensen's

financial circumstances here strongly counsel against transfer.  *See Eberhart v. Baker*, 652

F.Supp. 1475, 1476-1477 (W.D. Pa. 1987) (denying motion to change venue where transfer

might have the effect of preventing an *in forma pauperis* plaintiff from obtaining any opportunity

for relief because he "may not be financially able" to pursue his claims in a different forum).

### D.    Interests of Justice

The parties mostly rehash other factors like convenience and cost under the rubric of

"interest of justice," although they raise a few new arguments.  Simon & Schuster contends that

because Jensen's wage, expenses, advances, and royalty claims will be decided under New York

law, it is in the interest of justice for a New York district court to apply familiar New York state

law to those claims.  Section 1404(a) generally favors allowing diversity cases to proceed before

a court that is familiar with the governing law.  *See Van Dusen v. Barrack*, 376 U.S. 612, 645

(1964).  However, since Jensen should be given leave to replead her wage, expenses, advances,

and royalty claims, it is unclear at the moment what substantive law will form the basis for

evaluating those claims.  If Jensen's brief on this motion is any indication, those claims will be pled under federal wage and copyright law, as well as New York law.  Thus, the potential application of New York wage law favors Simon & Schuster's transfer request, but not significantly.

Simon & Schuster also contends that because this case is at a very early stage, transfer of venue would still be efficient.  Courts properly consider the duration of pendency of the litigation in assessing a motion for transfer, but that factor has the most impact when litigation has already proceeded for years in the current venue.  *See, e.g., Moore v. Telfon Commc'ns Corp.*, 589 F.2d 959, 968 (9th Cir. 1978) (affirming denial of motion to change venue in part because the motion was made six years into the litigation).  Although the short pendency of this case does not "militate against transfer," *see, e.g. Fodor v. Berglas*, No. 94-CV-4761, 1994 WL 822477, at *5 (C.D. Cal. Dec. 27, 1994), neither does it affirmatively favor transfer.

Last, Jensen suggests that the interest of justice favors venue remaining in the District of Oregon because Simon & Schuster "has facilities here in Oregon and is registered to do business here." (P.'s Br., #20, at 16.)  Jensen refers to the fact that Simon & Schuster's website requires returns to be shipped to its "Returns Department" located in Roseburg, Oregon, and that Simon & Schuster Global Services, Inc. is registered as a corporation in Oregon. (Jensen Decl., #21, ¶10, Exs. F, G.)  Defendant explains that Simon & Schuster Global Services, Inc. is a completely different entity than Simon & Schuster, Inc. (the defendant in this case), and that Simon & Schuster, Inc. has no employees, officers, or other strong ties in Oregon.  The extent of Simon & Schuster's contacts with Oregon is surely a matter of factual dispute inappropriate for resolution

on the current record. But even if Simon & Schuster indeed has some employees in Oregon, I still agree with defendant that the controversy – Jensen's treatment in her workplace – is more closely linked to New York than Oregon. This factor therefore favors transfer as well.

Overall, the motion to transfer presents a close call. On the one hand, convenience of witnesses and interests of justice favor transfer. On the other hand, convenience of the parties supports venue remaining in the District of Oregon. Ultimately, I resolve the issue on the basis of the weight accorded to Jensen's choice of forum and the evidence adduced by defendant to disturb that choice. Simon & Schuster contends that Jensen's choice of forum in Oregon is entitled only to minimal weight, because the events at issue in this case occurred in New York and because Oregon has no particular interest in the litigation. *See Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968) ("If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."). But Simon & Schuster misconstrues the holding of *Pence*. In that case, plaintiff was an Australian corporation, with no significant ties to Hawaii – it's chosen forum – except that the District of Hawaii was the most geographically proximate federal court to its base of operations. *Id.* at 955. *Pence* simply describes the frequently recognized principle that where a plaintiff is a nonresident of the chosen forum, that choice is given significantly less weight, mainly to discourage forum shopping by plaintiffs. *See, e.g., Gemini Capital Group v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998); *Roling v. E\*Trade Sec., LLC*, 756 F.Supp.2d 1179, 1186–1187 (N.D.Cal. 2010).

Here, however, Jensen is a resident of Oregon. There is no indication that she chose

Oregon for any reasons other than personal convenience and financial necessity. In this instance, Simon & Schuster must make "a strong showing of inconvenience" to counteract Jensen's choice of forum. *Decker*, 805 F.2d at 843. Because Simon & Schuster has not made that showing, its motion to transfer venue should be denied.

## CONCLUSION

For the foregoing reasons, Simon & Schuster's motion to dismiss (#13) should be granted in part and denied in part. The court should grant Jensen leave to replead her claims for unpaid wages, expenses, advances and royalties. Simon & Schuster's alternative motion to transfer venue (#13) should be denied, with leave to refile at a later time.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 12th day of December, 2012.

Honorable Paul Papak
United States Magistrate Judge

Page 17 - FINDINGS AND RECOMMENDATION